UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 11-1067 DSF | | Date | 4/13/12 |
|---|---|---|---|---|

| Present: The Honorable | DALE S. FISCHER, UNITED STATES DISTRICT JUDGE |
|---|---|
| Interpreter | Not Present |

| Debra Plato | Not Present | Vibhav Mittal |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 1) Doren Harold Ward | Not | X | | 1) John L. Littrell/Asal Akhondzadeh | Not | X | |

**Proceedings:** (In Chambers) Order GRANTING in Part and DENYING in Part Defendant Ward's Motion to Suppress Statements (Docket No. 34)

    Defendant moves to suppress various statements made to law enforcement officers in connection with two separate arrests: one on August 14, 2011 and one on October 31, 2011. The motion is supported only by a brief declaration of the Defendant that fails to raise any issues concerning the existence or propriety of the <u>Miranda</u> warnings, as more particularly described below.[1] Although Defendant demanded an evidentiary hearing in his moving papers, at oral argument he declined the opportunity to cross-examine either government declarant.

    The Court concludes that an evidentiary hearing on the motion to suppress is not appropriate because – as described below – there is no relevant factual dispute. Having reviewed the papers and heard the parties' arguments at the motion hearing, the Court concludes that the statements made on August 14 and October 31 were voluntary.

## I.  August 14 Statements

    Defendant was arrested on August 14, 2011 after police were summoned to a Rolex store where Defendant had allegedly attempted to purchase a watch with a fake driver's license and credit card. (Kuo Decl. ¶¶ 3, 5-6, 8, Ex. A (incident report) at 2.) After his arrest, Defendant

---

[1] Local Criminal Rule 12-1.1 requires that a motion to suppress be "supported by a declaration on behalf of the defendant, setting forth all facts then known upon which it is contended the motion should be granted." The Court acknowledges that Defendant did not admit the truth of the facts stated in the exhibits attached to his motion. However, he was obviously aware of the government's position concerning those facts. To the extent Defendant fails to dispute the facts, he has shown no reason to have an evidentiary hearing other than the simple desire to cross-examine the government's witnesses.

was taken to a police substation, where he gave a statement. (Kuo Decl. ¶¶ 8, 14, Ex. A at 3.)

A suspect's statements made during custodial interrogation cannot be used against him at trial unless the suspect is first given Miranda warnings. See Miranda v. Arizona, 384 U.S. 436, 444 (1966). It is undisputed that Defendant was in custody at the time all relevant statements were made. Defendant does not dispute that, before taking his statement at the police substation, Officer Kuo read Defendant Miranda warnings from a department-issued Miranda warning card, or that Defendant stated that he understood the warnings. (Kuo Decl. ¶¶ 12-14, Ex. A at 3, Ex. B.) Defense counsel conceded (in the Reply and at the motion hearing) that these facts are sufficient to establish that Defendant was properly Mirandized. See Berghuis v. Thompkins, 130 S. Ct. 2250, 2261 (2010) (government bears the burden of showing the valid waiver of Miranda rights by a preponderance of the evidence). The Court concludes that these facts also sufficiently establish a knowing and intelligent waiver, as Defendant does not contend that he did not understand the warnings. However, Defendant argues that his pre-Miranda statements must be suppressed, and that his post-Miranda statements were involuntary.

### A. Pre-Miranda Statements

It is undisputed that Officer Kuo asked Defendant questions before reading him the Miranda warnings. (Kuo Decl. ¶¶ 5, 7-10.) Miranda warnings are required only where a suspect is subject to interrogation. See Rhode Island v. Innis, 446 U.S. 291, 300 (1980). "Interrogation" refers to "express questioning" as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." Id. at 300-01. Actions "normally attendant to arrest and custody" include "routine gathering of background biographical information, such as identity, age, and address." United States v. Washington, 462 F.3d 1124, 1132 (9th Cir. 2006). "Questions about a person's identity are not unconstitutional even if identification of the person may help lead to the prosecution of that person for a crime." Id. at 1133 (concluding that asking an arrestee what his gang nickname was constituted a routine booking question and not interrogation). The standard for determining whether questioning constitutes interrogation is objective; the subjective intent of police, although relevant, is not conclusive. Id. at 1132.

There can be no real argument that Defendant's birthday, address, and the description of his tattoos constitutes routine booking information. Under Washington, asking Defendant his true name falls within this category as well.[2] The motion to suppress is DENIED as to those

---

[2] Defense counsel points out that Defendant was suspected of attempting to make a fraudulent purchase, and therefore "the police should [have] know[n]" that asking Defendant's true name was "reasonably likely to elicit an incriminating response." Innis, 446 U.S. at 301. However, the concern of the Miranda Court in focusing on custodial interrogation was that the environment of such interrogation was inherently coercive. See id. at 299; Miranda, 384 U.S. at 455-57. This concern

statements.

Officer Kuo also asked Defendant why he ran away from the officer, where Defendant's female friend was, and whether Defendant had a car parked at the shopping center with the Rolex store. (Kuo Decl. ¶¶ 5, 9-10.) Officer Kuo declares that he asked about Defendant's friend in order to determine whether there was another suspect still at the shopping center that could pose a threat, (id. ¶ 9), and that he asked about Defendant's car because of the possibility that it would be left in the parking lot overnight, (id. ¶ 10). These inquiries – particularly asking why Defendant ran away – do not constitute "routine gathering of background biographical information." That Officer Kuo had a legitimate basis for asking the questions does not shift them into that category. Thus, the questions constitute interrogation if Kuo "*should have known* [they] were reasonably likely to elicit an incriminating response." Innis, 446 U.S. at 302; see also Miranda, 384 U.S. at 476-77 (defining "incriminating" broadly).

The Court concludes that questioning Defendant about why he ran away qualifies as interrogation. From Officer Kuo's perspective, asking Defendant why he fled was likely to elicit information about Defendant's suspected wrongdoing. A lack of intent to elicit incriminating responses is not dispositive of whether he should have known that such responses were likely. The motion to suppress is GRANTED as to this statement.

The Court inquired at the hearing whether the government intended to use the statements regarding Defendant's companion and whether Defendant had a car at the shopping center. The government was not prepared at that time to answer definitively. Neither party has supplied persuasive evidence or argument on questions of this precise nature. Although Officer Kuo acknowledges that he thought of Defendant's companion as a "suspect," (Kuo Decl. ¶ 9), his questions were likely to elicit incriminating evidence about the companion, not Defendant. As for the questions about Defendant's car, the record does not suggest that information about the car would link Defendant in any way to the crime he was suspected of committing. Because they did not, in fact, elicit incriminating evidence, it is not likely the questions or answers would even be relevant. For that reason, the Court tentatively excludes them at this time. The government may not introduce this evidence without seeking permission of the Court outside the presence of the jury.

**B.    Post-Miranda Statement**

---

generally is not present when police ask standard questions that are asked of every arrestee. Moreover, the parameters of which circumstances constitute interrogation requiring Miranda warnings are designed to preserve an individual's Fifth Amendment right against self-incrimination. See Innis, 446 U.S. at 299; Miranda, 384 U.S. at 455-57. The Supreme Court has suggested that this right is not violated simply because an individual is required to supply neutral information that may constitute "a 'link in the chain' of evidence leading to prosecution and conviction." California v. Byers, 402 U.S. 424, 428 (1971).

The government has the burden of demonstrating by a preponderance of the evidence that Defendant's post-Miranda statements were voluntary. See Lego v. Twomey, 404 U.S. 477, 489 (1972). Voluntariness is measured by the totality of the circumstances. See Withrow v. Williams, 507 U.S. 680, 693-94 (1993). Courts should consider factors such as police coercion, the length, location, and continuity of interrogation, and the defendant's maturity, education, physical condition, and mental health. See id.

"[C]oercive police activity" is a "necessary predicate" to finding a confession was involuntary. Colorado v. Connelly, 479 U.S. 157, 167 (1986). Voluntariness "has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." Id. at 170. Thus, determining voluntariness does not require "sweeping inquiries into the state of mind of a criminal defendant who has confessed" where such inquiries are "divorced from any coercion brought to bear on the defendant by the State." Id. at 167.

Defendant argues that his post-Miranda statements were a product of police coercion because they were preceded by the use of force to subdue Defendant at the time of his arrest.[3] (Mot. at 6-8.) Unlike the cases cited by Defendant, this case involves neither physical violence "during detention," Stein v. New York, 346 U.S. 156, 182 (1953), overruled on other grounds by Jackson v. Denno, 378 U.S. 368 (1964), nor the "threat of a repetition" of physical violence if a confession was not obtained, United States v. Jenkins, 938 F.2d 934, 940 (9th Cir. 1991); see also Cooper v. Scroggy, 845 F.2d 1385, 1388 (6th Cir. 1988). The uncontroverted evidence establishes that Officer Kuo used force at the time of Defendant's arrest, not because Defendant refused to confess, but because Defendant tried to evade law enforcement, (see Kuo Decl. ¶ 3, Ex. A at 2; Docket No. 67 (surveillance video)), and nothing in Defendant's declaration suggests otherwise. Even if – as defense counsel argues – more force was used than was necessary to effectuate the arrest, nothing in the record suggests that Defendant should have feared being subjected to violence once he was in custody. Indeed, Defendant does not contend otherwise. He merely declares: "I did not feel like I was free to leave the room because I was handcuffed and I didn't feel like I had a choice about whether or not to answer the questions." (Ward Decl. ¶ 7.) He does not say – nor was there any reasonable basis for him to believe – that he would be subjected to further violence if he remained silent. In light of the facts established by the government, Defendant has not shown "the essential link between coercive activity of the

---

[3] In addition to the involuntariness argument, defense counsel suggested for the first time at the motion hearing that Officer Kuo's pre-Miranda interrogation, together with the force used to effectuate Defendant's arrest, diluted the effectiveness of the Miranda warnings. This argument is valid in some factual circumstances. See Missouri v. Seibert, 542 U.S. 600, 616 (2004). However, defense counsel failed to raise it in the motion papers, the government had no opportunity to respond in writing, and the Court therefore declines to consider it. In any event, it appears that the Seibert analysis would not apply to the facts of this case. See United States v. Williams, 435 F.3d 1148, 1157 (9th Cir. 2006) (concluding that the Seibert analysis applies only where evidence shows that pre-Miranda questioning was *intended* to dilute the effectiveness of Miranda warnings). No such showing has been made here.

[government], on the one hand, and a resulting confession by [the Defendant], on the other." See Colorado v. Connelly, 479 U.S. at 165. Thus, the post-Miranda statements will not be excluded.

As the government points out, the other circumstances surrounding Defendant's post-Miranda statements reinforce the conclusion that the statements were voluntary. (Gov't Opp'n at 8-9.) The statements were given in a context distinct from the circumstances of Defendant's arrest, after Defendant had been moved to the substation. (Kuo Decl. ¶¶ 3, 8, 12.) There is no allegation of police coercion during the questioning, which lasted approximately 30 minutes. (Id. ¶ 15.) In addition, Defendant is an adult with lengthy experience with the criminal justice system. (Docket No. 1 (Compl.) ¶ 23.)

The motion is DENIED as to the post-Miranda statements.

## II.  October 31 Statement

There no dispute that, prior to being questioned by Postal Inspector Robbins on October 31, Defendant signed a form indicating that he understood and waived his Miranda rights.[4] (Robbins Decl. Ex. B; Ward Decl. ¶ 9.) Defense counsel concedes in his papers and at oral argument that these facts are sufficient to establish that Defendant was properly Mirandized. (Reply at 2.) The form signed by Defendant is sufficient to establish a valid waiver of Miranda rights. See Florida v. Powell, 130 S. Ct. 1195, 1200 (2010). Defendant offers no evidence that the waiver was not knowing and intelligent; he merely states that he does not presently remember what the form said. (Ward Decl. ¶ 9.)

Defendant's only remaining argument is that the alleged taint of the circumstances occurring on August 14 extends to this separate arrest and statements more than two months later. For the reasons given above, the Court concludes that Defendant's October 31 statement were voluntary. Neither the force exerted to effectuate Defendant's August 14 arrest, nor the circumstances surrounding the October 31 interrogation, suggest that Defendant was compelled to make incriminating statements. Defendant's motion is DENIED as to these statements.

## III.  Conclusion

The motion to suppress statements is GRANTED as to Defendant's responses to Officer Kuo's inquiry regarding why Defendant ran away. The statements in response to questions about his female companion and his car will not be introduced without a further order of this Court. The motion is DENIED in all other respects.

IT IS SO ORDERED.

---

[4] There is no dispute that Defendant was in custody at the time he was Mirandized.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**